IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHERRI WATTS | ) |
|     Plaintiff, | ) Case No. <br> ) <br> ) Jury Demand |
| -vs.- | ) <br> ) |
| COMMAND CENTER INC. | ) <br> ) |
|     Defendant. | ) |

_____

**COMPLAINT**
_____

Plaintiff Sherri Watts, a former employee of Defendant Command Center Inc., brings this action for compensatory damages following a violent rape she suffered while at work on December 15, 2016. The rape occurred in the Bridgestone Arena in Nashville, TN. Command Center employed Cleotha Washington, the man who raped Ms. Watts. Mr. Washington is and was a registered sex offender, stemming from his guilty plea of Assault with Intent to Commit Sexual Abuse in the State of Iowa. A simple Google search would have revealed Mr. Washington's sex offender status.

### PARTIES

1. Plaintiff Sherri Watts, a female, was working as an employee of Command Center on December 15, 2016. Ms. Watts was 49 years old at the time.

2. Defendant Command Center Inc. is a publicly traded company with over five hundred employees and is headquartered in Lakewood, Colorado. Defendant Command Center has a local branch in Nashville, TN, where Plaintiff Watts was hired as an employee.

### JURISDICTION

3. Jurisdiction is invoked pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000 et. seq., This Court has supplemental jurisdiction over state claims alleged herein pursuant to 28 U.S.C. Section 1367.

4. All procedural prerequisites to the filing of this action have been fulfilled—to wit, the timely filing of a charge of discrimination with the Equal Employment Opportunity Commission and the receipt of a Notice of a Right to Sue issued by the EEOC on April 20, 2017, attached as "Exhibit A."

5. Venue is proper in the United States District Court for the Middle District of Tennessee, as the events giving rise to this action occurred in the city of Nashville, within this judicial district.

## FACTS COMMON TO ALL CLAIMS

6. In December 2016, Sherri Watts was employed by Command Center, a temporary staffing agency, to perform overnight janitorial services in various venues and locations in the Nashville Area.

7. On the night of Thursday, December 15, 2016, SMS Holdings hired Command Center to clean the Bridgestone Arena after the Nashville Predators game against the Minnesota Wild. Ms. Watts worked this event, her late-night shift beginning at approximately 9:00 p.m.

8. Also working this shift as a Command Center employee was Cleotha Washington, a homeless man then residing at the Nashville Rescue Mission.

9. Mr. Washington is (and was) a registered sex offender, stemming from a conviction in Cedar Rapids, Iowa, in 2009 for Assault with Intent to Commit Sexual Abuse in violation of Iowa Code Section 709.11. A copy of the Plea and Sentence in the Iowa case is attached as "Exhibit B".

10. A simple Google search would have shown Mr. Washington's sex offender status.

11. Mr. Washington showed up for work to the Bridgestone Area reeking of alcohol, but was permitted to proceed to work anyway.

12. At some point early in the shift, Ms. Watts was approached by Mr. Washington. On the concourse near section 116, Mr. Washington dragged Ms. Watts into a single-occupancy

handicapped bathroom and locked the door. Once inside, Mr. Washington proceeded to force Ms. Watts without her consent into oral and vaginal sex. To accomplish this, Mr. Washington physically and violently assaulted Ms. Watts.

13. According to the police report, this violent ordeal was overheard by another Command Center employee, Clifton Hollowell, who overheard Ms. Watts's screaming and eventually went for help. A copy of this report is attached as "Exhibit C."

14. Mr. Washington was later apprehended and taken into custody.

15. Following this incident, Command Center's contract with Bridgestone Arena (SMS Holdings) was terminated.

16. Jim Burnett, chief development officer for SMS Holdings, issued the following public statement in response to this incident:

    a. "It is our policy to complete background checks on all of our employees. If an applicant's past criminal history would place others at risk, we won't hire them, period. The law requires us to consider criminal history on a case by case basis, and to consider the nature of the crime committed and the nature of the job to be done. We expect the same of any subcontractors we use for providing temporary labor and have made that clear. Local branch management of subcontractor *Command agreed to our policy of background checking employees, and we had every reason to believe that all temporary labor being provided had gone through this process*. We have decided to terminate this relationship. Moving forward, any staffing service utilized by our company to supplement labor will be required contractually to not only conduct a background check, but to verify they have done so on each temp candidate."[1]

17. Command Center agreed to SMS Holding's policy of background checking employees.

18. Command Center did not perform a background check on Cleotha Washington prior to hiring him.

19. A simple (free) internet search of the Davidson County Criminal Court Clerk's website would have revealed both that Mr. Washington was a registered sex offender (because he repeatedly failed to comply his obligation to register as an offender) and that Mr. Washington has a history of substance abuse.

---

[1] PATCH.COM, Nashville Man Arrested for Bridgestone Arena Rape, available at https://patch.com/tennessee/nashville/nashville-man-arrested-bridgestone-arena-rape (last visited June 27, 2017) (emphasis added).

3

20. On February 3, 2014, Mr. Washington was charged in Davidson County, Tennessee with "sex offender registration violation."

21. On March 17, 2014, Mr. Washington was charged in Davidson County, Tennessee with the same offense.

22. Mr. Washington was charged in Davidson County, Tennessee with "public intoxication" on December 1, 2013; March 8, 2014; January 17, 2015; July 10, 2015; July 28, 2015; October 19, 2015; November 4, 2015; and December 10, 2015—eight separate instances in all.

23. Mr. Washington was charged in Davidson County, Tennessee with drug-related offenses, including "possession or casual exchange" (March 8, 2014; July 28, 2015) and "unlicensed use of Dr. paraphernalia" (September 26, 2016)—this last offense occurring approximately three months before the rape of Ms. Watts.

24. Mr. Washington was charged in Davidson County, Tennessee with "criminal trespass" on May 17, 2007; September 30, 2015; and November 7, 2016—three separate instances, the last of which occurred approximately one month before the rape of Ms. Watts on December 15, 2016.

25. Cleotha Washington was arrested and charged with the felony rape of Ms. Watts on December 17, 2016.

26. At the preliminary hearing on December 29, Judge Melissa Blackburn heard testimony regarding the case against Mr. Washington and found probable cause to prosecute him.

27. Also at this hearing, Mr. Washington's attorney sought to examine Ms. Watts's cell phone. A subsequent analysis of the cell phone revealed that multiple text messages had been sent from Ms. Washington's phone to Ms. Watts's phone and that a single text message had been sent from Ms. Watts's phone to Mr. Washington's phone.

28. The content of the messages was not known.

29. Ms. Watts routinely let others borrow her phone, especially when she was working for Command Center.

30. One such person whom Ms. Watts allowed to borrow her phone was Kimberly (last name unknown), a fellow Command Center employee, who was responsible for coordinating and communicating with other Command Center employees once they arrived on the work site.

31. Ms. Watts never personally had a text message exchange with Mr. Washington.

32. The case was presented to the grand jury on March 30, 2017. The grand jury considered the above cell phone evidence, but did not hear the testimony of Clifton Hollowell, who overheard the rape and assault as it was occurring.

33. Mr. Hollowell, like Mr. Washington, is a homeless man, who was hired by Command Center from the Nashville Rescue Mission.

34. Mr. Hollowell did not testify before the grand jury.

35. Ms. Watts did not testify before the grand jury.

36. Upon hearing this incomplete evidence, the grand jury did not bring criminal charges.

37. The absence of criminal charges in this case is sadly typical of the overwhelming majority of sexual assault cases. It is estimated that out of every 1000 instances of rape, only 13 cases get referred to a prosecutor, and only 7 cases will lead to a felony conviction.[2] In 2011, the University of Kentucky Center for Research on Violence Against Women noted that "a national study estimates only 37% of reported rapes are prosecuted" and that only "18% of prosecuted rape cases end in a conviction."[3]

38. Following the rape incident, Ms. Watts never worked for Command Center again.

---

[2] Federal Bureau of Investigation, National Incident-Based Reporting System, 2012-2014 (2015); iv. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, Felony Defendants in Large Urban Counties, 2009 (2013).
[3] UK Center for Research on Violence Against Women, Top Ten Things Advocates Need to Know, available at https://opsvaw.as.uky.edu/sites/default/files/07_Rape_Prosecution.pdf (last visited July 4, 2017).

5

## FIRST CLAIM

(Violation of Title VII of the Civil Rights Act of 1964)

39. Plaintiff reasserts paragraphs 1-38 as if fully rewritten herein.

40. The severely abusive sexual conduct described above was unwanted and unwelcome to Ms. Watts.

41. The severely abusive sexual harassment suffered by Ms. Watts, a female employee, altered the working conditions of her employment, resulting in the abandonment of her employment as well as her severe emotional distress.

42. In the Sixth Circuit, a single act of sexual assault, like that which Mr. Washington committed, suffices to allege an actionable claim for creation of a sex-based hostile work environment. *Ault v. Oberlin Coll.*, 620 Fed. Appx. 395, 402 (6th Cir. 2015) (assailant shoved victim against shelves in a walk-in cooler and rubbed his genitals against her); *see also Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 474 (6th Cir. 2012) ("Except in the case of extreme incidents such as rape or sexual assault, a single, isolated event is typically insufficient to create a hostile work environment.")

43. Defendant negligently failed to conduct even a basic, simple, and free background check (internet search) on Cleotha Washington, despite Defendant's agreement with SMS Holdings to do exactly that (perform background checks).

44. A background check would have revealed Mr. Washington's prior conviction for a violent sex crime.

45. Command Center should have known that Cleotha Washington posed a substantial risk of sexual harassment and abuse of female employees.

46. The violent rape perpetrated upon Ms. Watts by Mr. Washington was, in light of Mr. Washington's prior conviction, foreseeable.

47. The severely abusive sexual harassment of Ms. Watts was a direct result of the negligence of Command Center as described above and constitutes severe, unlawful and

unwanted sexual harassment of a female employee in violation of Title VII of the Civil Rights Act of 1964, as amended.

48. As a direct and proximate result of Defendant's conduct, Ms. Watts has suffered and will suffer non-economic and economic injuries including but not limited to pain and suffering, emotional distress, humiliation, degradation, ridicule, the abandonment of her employment and other conditions and privileges of employment, for which Defendant is liable in compensatory and other damages pursuant to Title VII, as amended.

## SECOND CLAIM

(Tennessee Code Annotated § 4-21-101, *et. seq.*)

49. Plaintiff reasserts paragraphs 1-48 as if fully rewritten herein.

50. Defendant Command Center is an "employer" within the meaning of Tenn. Code Ann. § 4-21-102(5).

51. The sexual harassment as described above constitutes severe, unlawful and unwanted sexual harassment of a female employee in violation of Tenn. Code Ann. § 4-21-401, *et. seq.*

52. As a direct and proximate result of Defendant's conduct, Ms. Watts has suffered and will suffer non-economic and economic injuries including but not limited to pain and suffering, emotional distress, humiliation, degradation, ridicule, the abandonment of her employment and other conditions and privileges of employment, for which Defendant is liable in compensatory and other damages pursuant to Tenn. Code Ann. § 4-21-313.

## THIRD CLAIM

(Negligent Hiring and Retention)

53. Plaintiff reasserts paragraphs 1-52 as if fully rewritten herein.

54. Defendant Command Center had a duty to provide a safe working environment for its employees, including Ms. Watts.

55. Defendant Command Center had the authority and ability to control the employees it hired to work as Command Center employees.

56. Command Center elected to employ homeless men such as Mr. Washington without performing any background check on them whatsoever, even though SMS Holdings required Command Center to perform such background checks for employees hired to work the Bridgestone Arena.

57. Defendant Command Center had a duty to protect female employees like Ms. Watts from serial criminal offenders, especially violent sex offenders, such as Mr. Washington.

58. The frequency and number of criminal offenses committed by Mr. Washington establish that Mr. Washington's criminal behavior was repetitive and should have disqualified him from employment at Command Center, especially at the Bridgestone Arena.

59. On the night of December 15, 2016, Mr. Washington presented to the Bridgestone Arena smelling strongly of alcohol, consistent with his eight prior arrests for public intoxication of which Command Center should have been aware.

60. Despite his obvious unfitness for work—both because of his historical recidivism and his present intoxication—Command Center, through its agents, allowed Mr. Washington to proceed to the work site, where he violently raped and assaulted Ms. Watts.

61. As a direct and proximate result of Defendant's conduct, Ms. Watts has suffered and will suffer non-economic and economic injuries including but not limited to pain and suffering, emotional distress, humiliation, degradation, ridicule, the abandonment of her employment and other conditions and privileges of employment, for which Defendant is liable in compensatory and other damages.

**PRAYER FOR RELIEF**

62. WHEREFORE, Plaintiff Sherri Watts asks this Court to: enter judgment finding that Defendants violated federal and state law as described above; award economic and non-economic compensatory damages to fully, fairly and justly compensate her for her injury,

damages and loss in an amount to be determined at trial; award Plaintiff her costs, expert fees and reasonable attorneys' fees; award punitive damages; and grant such additional or alternative relief as the Court may determine to be just and equitable.

Respectfully submitted,

*Christopher Smith*
_____
Christopher W. Smith, TN BPR #034450
csmith@drslawfirm.com

DAVID RANDOLPH SMITH & ASSOCIATES

David Randolph Smith, TN BPR #011905
Dominick R. Smith. TN BPR #028783
W. Lyon Chadwick. Jr. TN BPR #029599
1913 21st Avenue South
Nashville, Tennessee 37212
615-742-1775

## JURY DEMAND

A trial by jury is hereby demanded.

/s/ Christopher W. Smith
Christopher W. Smith (034450)